ROSA E. ZAPATA, ADMINISTRATRIX (ESTATE OF LUIS A. ZAPATA), ET AL. *v.* J. WILLIAM BURNS, COMMISSIONER OF TRANSPORTATION
(13014)
(13025)
(13027)
(13029)
(13031)
(13040)
(13042)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued February 4—decision released May 17, 1988

Richard A. Silver and Richard A. Bieder, with whom were David P. Burke, Gerald E. Fogarty, Catherine C. Ziehl and, on the brief, Jay H. Sandak, Alexander J. Holland, Carey B. Reilly and Michael P. Koskoff, for the appellants (plaintiffs).

William B. Rush, with whom were Thomas F. Morgan and, on the brief, Sharon A. Creegan, for the appellee (third party defendant Tippetts-Abbett-McCarthy-Stratton).

Karen P. Blado filed a brief for the Connecticut Engineers in Private Practice, Inc., et al., as amici curiae.

HULL, J. These consolidated cases arise out of the collapse, on June 28, 1983, of a suspended span of the Mianus River Bridge on the Connecticut Turnpike (I-95) in Greenwich. The dispositive issue is the constitutionality, under both the state and federal constitutions, of General Statutes § 52-584a which bars actions against architects and engineers seven years after substantial completion of a project, irrespective of whether a claim has arisen by that time.[1]

---

[1] General Statutes § 52-584a provides: "ACTIONS AGAINST ARCHITECT OR PROFESSIONAL ENGINEER. No action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an improvement to real property; (B) for injury to property, real or personal, arising out of any such deficiency; (C) for injury to the person or for wrongful death arising out of any such deficiency, or (2) for contribution or indemnity which is brought as a result of any such claim for damages shall be brought against any architect or professional

As a result of the collapse of the bridge, three people were killed and three were injured, resulting in these actions for damages against the state of Connecticut. In each case the state impleaded Tippetts-Abbett-McCarthy-Stratton (TAMS), the architectural design firm for the bridge, seeking indemnification for any judgment which might be rendered in favor of the plaintiffs against the state. TAMS had designed the bridge and provided supervision and inspection of its construction pursuant to an agreement with the state dated June 24, 1954. The state approved the design of the bridge and accepted it on June 18, 1959, as a part of the state highway system.

After the state impleaded TAMS, each plaintiff filed a substitute complaint, in the alternative, against the third party defendant TAMS, adopting and restating the identical allegations made by the state in its complaint against TAMS. Each of the complaints in the alternative against TAMS sought monetary damages

engineer performing or furnishing the design, planning, supervision or observation of construction or construction of such improvement more than seven years after substantial completion of such improvement.

"(b) Notwithstanding the provisions of subsection (a) of this section, in the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the seventh year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within one year after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than eight years after the substantial completion of construction of such an improvement.

"(c) For purposes of subsections (a) and (b) of this section, an improvement to real property shall be considered substantially complete when (1) it is first used by the owner or tenant thereof or (2) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement, including any agreed changes to the contract or agreement, whichever occurs first.

"(d) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring action."

against it "[i]f defendant, J. William Burns, Commissioner of the State of Connecticut, Department of Transportation, is not legally responsible to plaintiffs." The actions against the state were concluded upon the plaintiffs' acceptance of the respective offers of judgment by the state pursuant to General Statutes § 13a-144.[2] On May 30, 1986, the trial court granted a motion for summary judgment filed by TAMS as to all complaints in the alternative filed by the plaintiffs, on the ground that the causes of action were brought more than seven years after the substantial completion of the Mianus River Bridge and were therefore barred by the relevant statute of limitations, General Statutes § 52-584a. The judgment rendered on TAMS' motion for summary judgment is the subject of the plaintiffs' appeals in this case.

After the plaintiffs accepted the state's offers of judgment, the state amended its pleadings to assert a subrogated claim against TAMS pursuant to § 13a-144, seeking damages for the amounts paid to the plaintiffs.

[2] General Statutes § 13a-144 provides in pertinent part: "DAMAGES FOR INJURIES SUSTAINED ON STATE HIGHWAYS OR SIDEWALKS. Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. . . . This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The commissioner, with the approval of the attorney general and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim."

On August 14, 1986, the jury returned a verdict for the defendant. The state appealed on the sole ground that the trial court erred in refusing to submit its claim of absolute public nuisance to the jury. This court found no error. *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 527 A.2d 688 (1987). The question of the constitutionality of § 52-584a was not involved in that appeal.

On this appeal the plaintiffs claimed that the trial court erred: (1) in granting TAMS' motion for summary judgment pursuant to General Statutes § 52-584a without an uncontroverted showing that at least one half the members of its partnership were licensed in Connecticut; (2) in rejecting the plaintiffs' claim that summary judgment could not enter in TAMS' favor based on General Statutes § 52-584a because that statute violated the plaintiffs' constitutional rights to equal treatment under article first, § 1, of the Connecticut constitution;[3] (3) in rejecting the plaintiffs' claim that summary judgment could not enter in TAMS' favor based on General Statutes § 52-584a because that statute violated the plaintiffs' constitutional rights to equal protection under article first, § 20, of the Connecticut constitution[4] and the fourteenth amendment to the United States constitution;[5] and (4) in rejecting the

[3] Article first, § 1, of the Connecticut constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

[4] Article first, § 20, of the Connecticut constitution provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

[5] Section 1 of the fourteenth amendment to the United States constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property,

plaintiffs' claim that summary judgment could not enter in TAMS' favor based on General Statutes § 52-584a because that statute violated the plaintiffs' right to redress under article first, § 10, of the Connecticut constitution.[6] The last three issues were raised in the trial court, and ruled on adversely to the plaintiffs in a well reasoned memorandum of decision granting TAMS' motion for summary judgment against the plaintiffs. TAMS raises as alternate grounds for sustaining the judgment the following issues: (1) whether the plaintiffs may maintain a cause of action for personal injuries and wrongful death where the state is, by statute, subrogated to the rights of the plaintiffs to maintain such actions; and (2) if the plaintiffs and the state share the right to maintain a cause of action to recover damages for personal injuries and wrongful death, whether the plaintiffs are precluded, under the doctrine of res judicata and collateral estoppel, from litigating the same issues and claims that have been adjudicated in the litigation prosecuted to conclusion by the state.

We need not address these alternate grounds since we find no error in the court's judgments granting summary judgment for TAMS. In view of the important public policy questions raised by the plaintiffs' constitutional claims it is preferable for us to address the merits of these claims directly.

I

First, however, we must address the plaintiffs' first claim of error. The plaintiffs claim that TAMS failed to establish that it qualified as a firm of architects or engineers within the meaning of § 52-584a and there-

without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

[6] Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

fore was not entitled to the protection provided by that statute. They claim that the statute bars actions against only those licensed as such in the state of Connecticut and that TAMS failed in its proof of this matter, leaving genuine issues of material fact which precluded the granting of its motion for summary judgment. The burden of establishing the absence of a genuine issue of material fact and the entitlement to recovery as a matter of law lies with the moving party. *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984); *Kakadelis* v. *DeFabritis,* 191 Conn. 276, 281, 464 A.2d 57 (1983).

The plaintiffs argue that § 52-584a extends only to those individuals who qualify under Connecticut law as architects and engineers.[7] Connecticut statutes predating § 52-584a to the present time have provided that no person may practice architecture or engineering in Connecticut without a license from the state. General Statutes §§ 20-290 and 20-302. Finally, General Statutes § 20-298a,[8] which became effective in 1965, requires that at least one half of the partners or principals in any partnership of architects and engineers shall be registered architects. TAMS counters

---

[7] In Connecticut an architect is defined as one who "engages in the practice of architecture." General Statutes § 20-288 (2). A professional engineer is one who is qualified "to engage in engineering practice" which includes, inter alia, "planning, design or responsible supervision of construction, in connection with any public or privately-owned structures . . . works or projects wherein the public welfare or the safeguarding of life, public health or property is concerned . . . ." General Statutes § 20-299 (1).

[8] "[General Statutes] Sec. § 20-298a. PARTNERSHIPS OF ARCHITECTS AND PROFESSIONAL ENGINEERS. Notwithstanding the provisions of this chapter and chapter 391, one or more architects and one or more professional engineers, each of whom is licensed under the provisions of said chapters, may form a partnership, joint enterprise or association, the title of which may include the words 'architects' and 'engineers.' At least half of the partners or principals in any such partnership, joint enterprise or association shall be licensed architects and all of its announcements, cards, printed matter and listings shall indicate as to each member whether he is an architect or a professional engineer."

that Robert Abbett, a registered Connecticut engineer, signed a contract with the state on TAMS' behalf to perform engineering services on the Mianus River Bridge, and that the contract plans for the bridge were also signed by Abbett and bear his professional engineer's seal.

We need not reach the question, however, of whether there was a genuine issue of material fact which should have precluded the granting of TAMS' motion for summary judgment. Section 20-298a became effective in 1965, eleven years after TAMS signed a contract to do design work for the bridge and six years after the bridge work was accepted by the state. The plaintiffs cite no authority and make no reasoned argument why § 20-298a should apply retroactively to TAMS. Further, the statute is concerned only with the manner in which architects and engineers may form partnerships and is not involved in any way with the licensing of either profession. At the legislative hearing on the statute, Carmine Lavieri, appearing for the Connecticut Chapter of the American Institute of Architects and the Connecticut Society of Architects, stated:

"Now with respect to [House Bill No.] 2626, this bill came about because the Attorney General has issued rulings in the past to the Architectural Examining Board and to the Board of Registration for Professional Engineers and Land Surveyors to the effect that architects cannot be in partnership with anybody else but architects; engineers cannot be in partnership with anybody but engineers, on the basis of the way the statutes now exist.

"There are many situations where it seems desirable for architects and engineers to form a joint partnership or perhaps a joint venture for one particular project. Many of the other states have this provision, and this bill was put in to accomplish that purpose."

Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1965 Sess., p. 109.

The plaintiffs, once again, offer no authority or logical reason why this statute should be grafted on to § 52-584a. There is no merit to this claim of error.

The plaintiffs' complaints in the alternative against TAMS were filed in 1986, twenty years beyond the date of substantial completion of the bridge. Therefore, unless § 52-584a is unconstitutional in one or more of the aspects claimed by the plaintiffs, the trial court was correct in granting TAMS' motion for summary judgment.

## II

### A

THE CONSTITUTIONALITY OF GENERAL STATUTES § 52-584A UNDER ARTICLE FIRST, § 1 (EQUALITY OF RIGHTS), AND ARTICLE FIRST, § 20 (EQUAL PROTECTION), OF THE CONNECTICUT CONSTITUTION AS WELL AS THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

The plaintiffs have briefed a claimed violation of article first, § 1, as a field of inquiry separate from consideration of the state and federal equal protection clauses. In the context of this case all three of these concepts are merged. The equality of rights provision contained in article first, § 1, of the Connecticut constitution has a meaning equivalent to the equal protection clause contained in the fourteenth amendment to the United States constitution. *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769 (1975); *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 195, 132 A. 561 (1926). Similarly, " ' "[t]he equal protection provisions of the federal and state constitutions have the same meaning and limitations." ' *Daily* v. *New Brit-*

*ain Machine Co.,* [200 Conn. 562, 577, 512 A.2d 893 (1986)]; see also *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982); *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 343 (1979); *Miller* v. *Heffernan,* 173 Conn. 506, 516–17, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978)." *Ecker* v. *West Hartford,* 205 Conn. 219, 237, 530 A.2d 1056 (1987).

" 'When a statute is challenged on equal protection grounds . . . the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined.' *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 596, 479 A.2d 793 (1984). ' "When a statutory classification impinges upon an inherently suspect class or affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling state interest." ' *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* 204 Conn. 746, 750, 520 A.2d 1276 (1987); *Keogh* v. *Bridgeport,* supra, 66; *Frazier* v. *Manson,* 176 Conn. 638, 645, 410 A.2d 475 (1979); see *Dunn* v. *Blumstein,* 405 U.S. 330, 335–42, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). Otherwise, a statute will stand if the classification bears a reasonable relation to a legitimate state interest. *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* supra; *Ryszkiewicz* v. *New Britain,* supra, 597; *Keogh* v. *Bridgeport,* supra." *Ecker* v. *West Hartford,* supra, 237–38.

The plaintiffs claim that because § 52-584a impinges on their fundamental right to access to the courts, it is subject to strict scrutiny and must be struck down unless justified by a compelling state interest. A right is fundamental for purposes of equal protection analysis if it is explicitly or implicitly guaranteed by the constitution. *San Antonio School District* v. *Rodriguez,* 411 U.S. 1, 33–34, 93 S. Ct. 1278, 36 L. Ed. 2d 16, reh. denied, 411 U.S. 959, 93 S. Ct. 1919, 36 L. Ed. 2d 418

(1973); *Frazier* v. *Manson,* supra, 646; *Horton* v. *Meskill,* 172 Conn. 615, 640, 376 A.2d 359 (1977). The plaintiffs claim that the right of access to the courts is implicit in article first, §§ 1 and 20, of the Connecticut constitution. They further claim that the right is explicitly provided by article first, § 10, of the Connecticut constitution.

" 'The key to discovering whether a right is fundamental is in assessing whether the right is explicitly or implicitly guaranteed by the Constitution. *San Antonio School District* v. *Rodriguez,* [supra, 34].' *Cardo* v. *Lakeland Central School District,* 592 F. Sup. 765, 770 (S.D.N.Y. 1984). Such rights include 'first amendment rights, which are explicitly provided for by the Constitution, see e.g., *Mt. Healthy City Board of Education* v. *Doyle,* 429 U.S. 274, 284–85, 97 S. Ct. 568, 574–575, 50 L. Ed. 2d 471 (1972); *Perry* v. *Sindermann,* 408 U.S. 593, 598, 92 S. Ct. 2694, 2698, 33 L. Ed. 2d 570 (1983); the right to travel interstate, which has been found to be implicit in the Constitution, see, e.g., *Martinez* v. *Bynum,* 461 U.S. 321, 103 S. Ct. 1838, 1842–43, 75 L. Ed. 2d 879 (1983); *Shapiro* [v. *Thomas,* 394 U.S. 618, 629–31, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969)]; and the right to vote, which is the guardian of all other rights. *Harper* v. *Virginia Board of Elections,* 383 U.S. 663, 667, 86 S. Ct. 1079, 1081, 16 L. Ed. 2d 169 (1966).' *Cardo* v. *Lakeland Central School District,* supra." *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* supra, 751. Further examples of fundamental rights implicitly guaranteed by the constitution are those of marriage; *Zablocki* v. *Redhail,* 434 U.S. 374, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978); privacy; *Roe* v. *Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147, reh. denied, 410 U.S. 959, 93 S. Ct. 1409, 35 L. Ed. 2d 694 (1973); and freedom of association. *NAACP* v. *Alabama,* 357 U.S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958).

We have never held, however, that a constitutional right of access to the courts automatically translates each and every claim that a litigant may raise into one invoking fundamental rights. " 'It cannot seriously be argued that a statutory entitlement to sue for wrongful death of another is itself a "fundamental" or "constitutional right." ' *Parham* v. *Hughes,* 441 U.S. 347, 358 n.12, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979) . . . ." *Ecker* v. *West Hartford,* supra, 238. The plaintiffs offer no reason why this principle should not apply equally to actions for personal injuries. In *Ryszkiewicz* v. *New Britain,* supra, 598, we applied the rational basis test to a statute despite the plaintiff's claim that it must face strict scrutiny because it impinges on the fundamental right to recover damages for injuries from tortious acts, citing the Connecticut constitution, article first, § 10. We conclude, therefore, that the standard by which to determine the equal rights protection challenge to § 52-584a is the rational basis test.

The court's function under this test is to decide whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. *Daily* v. *New Britain Machine Co.,* supra, 577. "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " Id., 578, quoting *Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989 (1920).

Every presumption is to be given in favor of the constitutionality of the statute. *New Milford* v. *SCA Services of Connecticut, Inc.,* 174 Conn. 146, 148, 384 A.2d 337 (1977); *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 114, 355 A.2d 72 (1974). "[C]ourts will assume that the legislature intended to

accomplish a reasonable and rational result." *Stoni* v. *Wasicki,* 179 Conn. 372, 376–77, 426 A.2d 774 (1979).

"[L]egislative enactments carry with them a strong presumption of constitutionality, and . . . a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." *Beccia* v. *Waterbury,* 192 Conn. 127, 133, 470 A.2d 244 (1984); *McKinney* v. *Coventry,* 176 Conn. 613, 621, 410 A.2d 453 (1979); *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 134, 394 A.2d 731 (1978).

Section 52-584a is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues. The clear mandate of General Statutes § 52-584a "was to create a seven year absolute maximum on actions against architects and engineers, based upon the finite barrier of substantial completion, regardless of the nature of the claim, while leaving any other lesser limitations in effect." *R. A. Civitello Co.* v. *New Haven,* 6 Conn. App. 212, 229, 504 A.2d 542 (1986).

We have stated in dictum that " '[t]here is no reason, constitutional or otherwise, which prevents the legislature from enacting a statute, such as § 8324 [now § 52-584], which starts the limitation on actions for negligence running from the date of "the act or omission complained of," even though at that date no person has sustained damage and therefore no cause of action has come into existence. Indeed, such a provision accords with the purposes of statutes of limitation. One purpose is to prevent the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution. *Anderson* v. *Bridgeport,* 134 Conn. 260, 266, 56 A.2d 650 [1947].' [*Vilcinskas* v. *Sears, Roebuck & Co.,*

144 Conn. 170, 174–75, 127 A.2d 814 (1956).] Again, one of the purposes of a statute of limitations is to protect a defendant from finding himself in a situation where, because of the lapse of time, he is unable to gather facts, evidence, and witnesses necessary to afford him a fair defense. For these reasons, the time for bringing an action starts at the time of the occurrence of the alleged negligence and not at the time when the person was injured. 'It is consonant with the purpose of protecting defendants against stale claims that the legislature should enact a statute, such as § [52-584 or 52-577a], which may on occasion bar an action even before the cause of action accrues.' *Vilcinskas* v. *Sears, Roebuck & Co.,* supra, 175." *Daily* v. *New Britain Machine Co.,* supra, 584.

The plaintiffs argue that § 52-584a violates article first, § 1, and the equal protection clauses of the state and federal constitutions, in that it fails to serve a public purpose and creates a classification that lacks a rational basis. They do not claim that statutes of limitation or repose in and of themselves lack a public purpose. We have recently said "[t]he enactment of '[s]tatutes limiting the time within which an action may be brought are the result of a legitimate legislative determination which balances the rights and duties of competing groups.' . . . A statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Citation omitted.) *Ecker* v. *West Hartford,* supra, 239–40; see also *Daily* v. *New Britain Machine Co.,* supra, 582. The

rational basis test requires us to decide first whether there are natural and substantial differences between the classes preferred by the legislation and all others, and then whether the differences identified are logically related to the subject and object of the legislation. *Tough* v. *Ives*, 162 Conn. 274, 293, 294 A.2d 67 (1972); *State ex rel. Higgins* v. *Civil Service Commission*, 139 Conn. 102, 107, 90 A.2d 862 (1952); *Lyman* v. *Adorno*, 133 Conn. 511, 521, 52 A.2d 702 (1947).

The plaintiffs claim that § 52-584a cannot pass the rational basis test because there is no justification for differentiating architects and engineers from others who are similarly situated, such as other members of the construction industry on the one hand and owners or possessors on the other. They also frame the argument in another way, characterizing § 52-584a as impermissible special interest legislation, citing extensive legislative history to support this claim. The argument, in essence, boils down to the question of whether there is a rational basis for the distinction between architects and engineers from other possible targets of liability arising out of similar claims.

Statutes in other jurisdictions that address this problem are not uniform. Provisions vary as to the type of actions precluded, the classes of people protected and the time in which such actions must be commenced. Further, the courts have dealt with the abrogation of rights, with questions of special legislation and with equal protection claims. All but six states (Arizona, Iowa, Kansas, New York, Nebraska and Vermont) have enacted statutes of repose for certain limited subjects of the construction industry. These statutes have been invalidated in thirteen states[9] and upheld

---

[9] *McClanahan* v. *American Gilsonite Co.*, 494 F. Sup. 1334 (D. Colo. 1980); *Jackson* v. *Mannesmann Demag Corporation*, 435 So. 2d 725 (Ala. 1983); *Turner Construction Co.* v. *Scales*, 752 P.2d 467 (Alaska 1988); *Universal Engineering Corporation* v. *Perez*, 451 So. 2d 463 (Fla. 1984); *Overland*

in twenty-three states.[10] See annot., 93 A.L.R.3d 1242 (1979).

The plaintiffs claim that the cases holding such statutes unconstitutional are the better reasoned decisions. The plaintiffs cite, among other cases, *Skinner* v. *Anderson*, 38 Ill. 2d 455, 231 N.E.2d 588 (1967), in which a four year statute was held unconstitutional on the ground that it singled out contractors and architects for immunity from all those whose negligence in connection with construction might result in injury. The Supreme Court of Hawaii also found discrimination against the owner or possessor of property who might be held liable for damage or injury for which the engineer and contractor were in fact liable. *Fujioka* v. *Kam*, 55 Hawaii 7, 10–13, 514 P.2d 568 (1973) (holding classification unreasonable in immunizing the engineer and

*Construction Co.* v. *Sirmons,* 369 So. 2d 572 (Fla. 1979); *Shibuya* v. *Architects Hawaii, Ltd.,* 65 Hawaii 26, 647 P.2d 276 (1982); *Fujioka* v. *Kam,* 55 Hawaii 7, 514 P.2d 568 (1973); *Skinner* v. *Anderson,* 38 Ill. 2d 455, 231 N.E.2d 588 (1967); *Tabler* v. *Wallace,* 704 S.W.2d 179 (Ky. 1985); *Saylor* v. *Hall,* 497 S.W.2d 218 (Ky. 1973); *Muzar* v. *Metro Town Houses, Inc.,* 82 Mich. App. 368, 266 N.W.2d 850 (1978); *Pacific Indemnity Co.* v. *Thompson-Yaeger, Inc.,* 260 N.W.2d 548 (Minn. 1977); *State Farm Fire & Casualty Co.* v. *All Electric, Inc.,* 99 Nev. 222, 660 P.2d 995 (1983); *Henderson Clay Products, Inc.* v. *Edgar Wood & Associates, Inc.,* 122 N.H. 800, 451 A.2d 174 (1982); *Terry* v. *New Mexico State Highway Commission,* 98 N.M. 119, 645 P.2d 1375 (1982); *Loyal Order of Moose, Lodge 1785* v. *Cavaness,* 563 P.2d 143 (Okla. 1977); *Broome* v. *Truluck,* 270 S.C. 227, 241 S.E.2d 739 (1978); *Daugaard* v. *Baltic Co-Op Building Supply Assn.,* 349 N.W.2d 419 (S.D. 1984); *Kallas* v. *Millwork Corporation* v. *Square D Co.,* 66 Wis. 2d 382, 225 N.W.2d 454 (1975); *Phillips* v. *ABC Builders, Inc.,* 611 P.2d 821 (Wyo. 1980).

[10] *Cournoyer* v. *Massachusetts Bay Transportation Authority,* 744 F.2d 208 (1st Cir. 1984); *Hartford Fire Ins. Co.* v. *Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362 (6th Cir. 1984); *Deville Furniture Co.* v. *Jesco, Inc.,* 697 F.2d 609 (5th Cir. 1983); *Adair* v. *Koppers Co.,* 541 F. Sup. 1120 (N.D. Ohio 1982); *Cudahy Co.* v. *Ragnar Benson, Inc.,* 514 F. Sup. 1212 (D. Colo. 1981); *President & Directors* v. *Madden,* 505 F. Sup. 557 (D. Md. 1980); *Smith* v. *Allen-Bradley Co.,* 371 F. Sup. 698 (W.D. Va. 1974); *Carter* v. *Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970); *Barnhouse* v. *Pinole,* 133 Cal. App. 3d 171, 183 Cal. Rptr. 881 (1982); *Salinero* v. *Pon,* 124 Cal. App. 3d 120, 177 Cal. Rptr. 204 (1981); *Yarbro* v. *Hilton Hotels*

contractor but not the owner); accord *Tabler* v. *Wallace*, 704 S.W.2d 179, 189 (Ky. 1985), cert. denied, 479 U.S. 822, 107 S. Ct. 89, 93 L. Ed. 2d 41 (1986) (similar conclusion); *Henderson Clay Products, Inc.* v. *Edgar Wood & Associates, Inc.*, 122 N.H. 800, 802, 451 A.2d 174 (1982) (all who participate in the enterprise should be held to account for their share of the blame). We disagree, preferring to follow the substantial majority of the cases that have found such statutes constitutional.

It is our view that rational distinctions do exist between architects and engineers and others involved in the construction process. *Klein* v. *Catalano*, 386 Mass. 701, 715–16, 437 N.E.2d 514 (1982); *Freezer Storage, Inc.* v. *Armstrong Cork Co.*, 476 Pa. 270, 275–78, 382 A.2d 715 (1978). The owner of real estate

*Corporation,* 655 P.2d 822 (Colo. 1982); *Cheswold Volunteer Fire Co.* v. *Lambertson Construction Co.,* 462 A.2d 416 (Del. 1983); *Mullis* v. *Southern Co. Services,* 250 Ga. 90, 296 S.E.2d 579 (1982); *Twin Falls Clinic & Hospital Building Corporation* v. *Hamill,* 103 Idaho 19, 644 P.2d 341 (1982); *Matayka* v. *Melia,* 199 Ill. App. 3d 221, 456 N.E.2d 353 (1983); *Beecher* v. *White,* 447 N.E.2d 622 (Ind. App. 1983); *Burmaster* v. *Gravity Drainage District No. 2,* 366 So. 2d 1381 (La. 1978); *Whiting-Turner Contracting Co.* v. *Coupard,* 304 Md. 340, 499 A.2d 178 (1985); *Kings Department Stores, Inc.* v. *Poley-Abrams Corporation,* 386 Mass. 1008, 437 N.E.2d 237 (1982); *Klein* v. *Catalano,* 386 Mass. 701, 437 N.E.2d 514 (1982); *Cliffs Forrest Products Co.* v. *Al Disdero Lumber Co.,* 144 Mich. App. 215, 375 N.W.2d 397 (1985); *O'Brien* v. *Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336 (1980); *Calder* v. *Crystal,* 318 N.W.2d 838 (Minn. 1982); *Anderson* v. *Fred Wagner & Roy Anderson, Jr., Inc.,* 402 So. 2d 320 (Miss. 1981); *Reeves* v. *Ille Electric Co.,* 170 Mont. 104, 551 P.2d 647 (1976); *O'Connor* v. *Altus,* 123 N.J. Super. 379, 303 A.2d 329 (1973); *Rosenberg* v. *North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); *Howell* v. *Burk,* 90 N.M. 688, 568 P.2d 214 (1977); *Lamb* v. *Wedgewood South Corporation,* 55 N.C. App. 686, 286 S.E.2d 876 (1982); *Joseph* v. *Burns,* 260 Or. 493, 491 P.2d 203 (1971); *Freezer Storage, Inc.* v. *Armstrong Cork Co.,* 234 Pa. Super. 441, 341 A.2d 184 (1975); *McMacken* v. *State,* 320 N.W.2d 131 (S.D. 1982); *Harmon* v. *Argus Jessup Associates, Inc.,* 619 S.W.2d 522 (Tenn. 1981); *Sowders* v. *M.W. Kellogg Co.,* 663 S.W.2d 644 (Tex. 1984); *Ellerbe* v. *Otis Elevator Co.,* 618 S.W.2d 870 (Tex. 1981); *Hill* v. *Forrest & Cotton, Inc.,* 555 S.W.2d 145 (Tex. 1977); *Good* v. *Christensen,* 527 P.2d 223 (Utah 1974); *Yakima Fruit & Cold Storage Co.* v. *Central Heating & Plumbing Co.,* 81 Wash. 2d 528, 503 P.2d 108 (1972).

has the continuing duty and ability to maintain the property after the architect or engineer has completed his work. See *Adair* v. *Koppers Co.,* 541 F. Sup. 1120 (N.D. Ohio 1982); *Yarbro* v. *Hilton Hotels Corporation,* 655 P.2d 822 (Colo. 1982); *Mullis* v. *Southern Co. Services, Inc.,* 250 Ga. 90, 296 S.E.2d 579 (1982); *Beecher* v. *White,* 447 N.E.2d 622 (Ind. App. 1983); *Klein* v. *Catalano,* supra. With the passage of time it is more likely that any defect is caused by improper maintenance rather than defects in design. See comment, "Limitation of Actions Statutes for Architects and Builders—Blueprints for Non-action," 18 Cath. U.L. Rev. 361, 364 (1969). After acceptance by the owner, the architect or engineer ordinarily lacks control of the improvement. *Klein* v. *Catalano,* supra, 716. Further, architects and engineers are subject to claims from one or more potential plaintiffs and under more theories of liability than are owners. *Beecher* v. *White,* supra, 627; *Freezer Storage, Inc.* v. *Armstrong Cork Co.,* supra, 278–79.

Very strong factors distinguishing architects and engineers from contractors were found in *O'Brien* v. *Hazelet & Erdal,* 410 Mich. 1, 17–18, 299 N.W. 2d 336 (1980), where the court stated: "The legislature might have concluded that the different education, training, experience, licensing and professional stature of architects and engineers made it more likely that a limitation on their tort liability would not reduce the care with which they performed their tasks than would be the case with contractors.

"The legislature may also have thought it necessary to reduce the potential liability of architects and engineers in order to encourage experimentation with new designs and materials."

We conclude that the classification of architects and engineers in a manner different from other groups

involved in the construction process bears a rational relationship to a legitimate state end and is based on reasons related to the accomplishment of that goal.

## B

### THE CONSTITUTIONALITY OF GENERAL STATUTES § 52-584A UNDER ARTICLE FIRST, § 10, OF THE CONNECTICUT CONSTITUTION.

The plaintiffs claim that the statute is unconstitutional under the right of redress section of the Connecticut constitution which provides "[a]ll courts shall be open, and every person, for any injury done to him in his person, property, or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." They claim that the statute violates this section by abolishing common law rights of actions for both personal injuries and death, which existed at the time of the adoption of our constitution in 1818 and its "reincorporation" in 1965,[11] without providing claimants with reasonable alternates.

We recently considered a similar constitutional claim in *Daily* v. *New Britain Machine Co.*, supra. In *Daily,* the plaintiff employees claimed that General Statutes § 52-577a, the product liability statute, was unconstitutional because it barred a cause of action even before it accrued, in violation of article first, § 10. They claimed that if workers are injured on the job by equipment older than the ten year statutory limitation of liability, their causes of action could be absolutely foreclosed even before they might arise. Since workers are limited to workers' compensation benefits after the statutory period they claimed that they were deprived

---

[11] The plaintiffs merely assert the claim that the "reincorporation" of the right of redress section updates the time for determining existing rights, without citing any authority or offering any logical argument why this should be so. We, therefore, do not consider this argument.

of their state constitutional right to seek redress in the courts. Id., 582.

We stated in *Daily:* "The plaintiffs further argue that the 'open court' provision of Connecticut's constitution restricted the power of the legislature to abolish a cause of action recognized at common law. This same claim was raised in *Gentile* v. *Altermatt,* 169 Conn. 267, 286, 363 A.2d 11 (1975), where we held that 'article first, § 10, recognized all existing rights and removed from the power of the legislature the authority to abolish those rights in their entirety . . . [but] the legislature retains the power to provide reasonable alternatives to the enforcement of such rights. Where such reasonable alternatives are created, the legislature may then restrict or abolish the incorporated common-law or statutory rights.' See also *Kluger* v. *White,* 281 So. 2d 1, 4–5 (Fla. 1973); 16B C.J.S. 509–10, Constitutional Law § 710; Ruben & Williams, 'The Constitutionality of Basic Protection,' 1 Conn. L. Rev. 44, 46 n. 13 (1968), and cases cited therein. The claimed injuries suffered as a result of an alleged defective product, like injuries suffered in an automobile accident, could be linked to the preconstitutional common law action of trespass on the case and, as such, could be considered a constitutionally incorporated common law right. It is clear then that the framers of the state constitution intended that our courts be available for redress for the type of injury involved here." Id., 585. We concluded, however, that the workers' compensation statutes provided a reasonable alternative to access to the courts and, therefore, § 52-577a did not violate article first, § 10, of the Connecticut constitution.

The plaintiffs seek to distinguish *Daily* by arguing that § 52-584a differs from the product liability statute because the legislature has not provided any reasonable alternative to access to the courts for injuries arising out of the defective work of architects and

engineers. We need not, however, reach that issue if, at the time of the adoption of our constitution, the plaintiffs would not have been able to pursue the claims that they maintain that the legislature has unconstitutionally abrogated by enacting § 52-584a. In *Ecker* v. *West Hartford,* supra, 235, we held that there was no civil right of action for wrongful death at common law or by statute in 1818. Therefore the plaintiffs' causes of action for wrongful death furnish no basis for a claim of unconstitutionality of § 52-584a. Concerning the plaintiffs' causes of action for personal injury we note that the existence of a cause of action for injuries negligently caused by an architect or engineer, by a person not a party to the contract between the architect or engineer and the owner, is a relatively recent development in the law. In *Coburn* v. *Lenox Homes, Inc.,* 173 Conn. 567, 378 A.2d 599 (1977), we upheld a negligence action by a subsequent purchaser of a house against the defendant, who had furnished a defective septic system to the original purchaser of the house. In so doing, we stated: "The revolution in the law of negligence which began with *MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 [1916], and which resulted in recognition that privity was not a legitimate concern in negligence actions has finally produced the general rule 'that the seller is liable for negligence in the manufacture or sale of any product which may reasonably be expected to be capable of inflicting substantial harm if it is defective.' " Id., 574. We built on the landmark *MacPherson* case by stating that "[t]he fact that we are dealing here with a suit by a subsequent purchaser is not fatal to the negligence claim since the requirement of privity should only be applicable to actions growing out of contract theory and should be irrelevant to tort actions." Id.

The *MacPherson* rule abolishing the privity requirement in negligence cases was gradually applied to build-

ing contractors and by logical extension to architects and engineers. "[T]he analogy of *MacPherson* v. *Buick Motor Co.*, was persuasive, and was finally accepted. It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done. This applies not only to contractors doing original work, but also to those who make repairs, or install parts, as well as supervising architects and engineers. There may be liability for negligent design, as well as for negligent construction." W. Prosser & W. Keeton, Torts (5th Ed.) § 104A, p. 723.

"An architect may be held liable for negligence in failing to exercise the ordinary skill of his profession, which results in the erection of an unsafe structure whereby anyone lawfully on the premises is injured. An architect's liability for negligence resulting in personal injury or death may be based upon his supervisory activities or upon defects in the plans. The liability of the architect, moreover, is not limited to the owner who employed him; the modern view is that privity of contract is not a prerequisite to liability." 5 Am. Jur. 2d, Architects § 25. "The effect of these legal developments on architects and engineers was to extend their liability beyond the date of completion of an improvement to all foreseeable users. See, e.g., *Laukkanen* v. *Jewel Tea Co., Inc.*, 78 Ill. App. 2d 153, 222 N.E.2d 584 (1966)." *R.A. Civitello Co.* v. *New Haven*, 6 Conn. App. 212, 225, 504 A.2d 542 (1986).

The plaintiffs, upon whom rests the burden of proving § 52-584a unconstitutional beyond a reasonable doubt, have cited no authority that the rule of privity in negligence actions was not applicable in 1818 nor are we aware of any such authority.

"[T]he right to redress in the courts must remain inviolate but it does not attach unless one suffers a recognized injury." *Gentile* v. *Altermatt, supra,* 284. We conclude, therefore, that in 1818 the claims of the plaintiffs in this case were not a "recognized injury," the removal of which constitutes a violation of the constitutional right of redress unless a reasonable alternative is provided.

There is no error.

In this opinion the other justices concurred.