[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 11, 1997
The plaintiff brought this action initially in nine counts against three defendants, The Inspector, Inc. ("Inspector"), Century 21 Mazz Realty, Inc. ("Mazz"), and Willington Termite Pest Control, Inc. ("Willington"). An amended complaint was filed on March 26, 1996 in response to a request to revise filed by the defendants. At trial, which commenced on May 29, 1997, the plaintiff and the defendants Willington and Inspector appeared. Upon inquiry by the court, the plaintiff's counsel advised the court that the action was being withdrawn as to Mazz and a signed withdrawal was submitted. After the trial commenced the plaintiff also withdrew the complaint against the defendant, Inspector, thus leaving Willington as the sole defendant in this matter.
Of the original nine-count complaint only counts seven and eight remain as only they addressed the defendant Willington. Count seven claims that the defendant Willington misrepresented the condition of the premises to the plaintiff. Count eight of the amended complaint claims that Willington was negligent with respect to the inspection of and reporting on the condition of the premises. Further, the plaintiff alleges that the defendant knew or should have known that his actions would cause the plaintiff substantial losses and emotional distress.
 I
In order for the plaintiff to recover damages in negligence, the plaintiff is required to prove that there existed a duty of care to the plaintiff which was breached by the defendant's failure to meet the standard of care arising therefrom and also that the breach was the proximate cause of the actual harm suffered by the plaintiff. Coburn v. Lenox Homes, Inc.,186 Conn. 370, 372 (Coburn II). In discussing the duty of care our Supreme Court has stated that "a duty to use care may arise from a contract, from a statute or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered CT Page 7183 was likely to result from his act or failure to act." Coburn II,supra, 375. It has long been decided that the concept of privity is not relevant in a negligence action, Macpherson v. Buick MotorCo., 217 N.Y. 382, 111 N.E. 1050 (1916) which case has been cited with approval by our Supreme Court, Zapata v. Burns,207 Conn. 496, 516, 542 A.2d 700 (1991).
While this court was unable to find any case in Connecticut holding that a pest inspection company who negligently performs its duties under a contract with a seller of real estate is liable to a buyer of that real estate, liability has been found in Connecticut for other professionals in circumstances.[1]
Therefore, the plaintiff in this matter has the burden of establishing that it was reasonably foreseeable that she would rely on the report rendered by the defendant and that the defendant's failure to exercise due care in the inspection or in the preparation of the report of the inspection was the proximate cause of the plaintiff's damages.
With respect to the plaintiff's claim of misrepresentation of a material fact, the burden is on the plaintiff to demonstrate that she reasonably relied upon a representation of a material fact, which representation was untrue, and that the representation was made for the purpose of inducing her to act in such a way as the defendant expects to gain an advantage. (SeeJohnson v. Healy, 176 Conn. 97, 101 (1978).) The misrepresentation may be of an innocent nature and need not be fraudulent if all the other elements are present.
 II
The court finds the following facts as the most credible evidence. Plaintiff is the present owner of the real property and improvements known as 21 Lake View Drive, Coventry, Connecticut. On October 14, 1992 she entered into an agreement to purchase that property for $99,300 (Plaintiff's Exhibit 4). Paragraph eleven of that agreement contained a home inspection contingency clause and paragraph twelve a termite or wood-destroying insect contingency clause.
The home inspection contingency clause made the contract contingent upon the buyer receiving a satisfactory report by a licensed home inspector attesting to the structural integrity of the home. The cost of this inspection and report was to be borne CT Page 7184 by the buyer. (Plaintiff's Exhibit 2).
The termite or wood destroying pest inspection contingency clause made the contract contingent upon the buyer obtaining a satisfactory inspection and report from a certified pest control inspector certifying that all buildings in the property are free from "infestation and/or damage" by termites or any other wood destroying pests. (Plaintiff's Exhibit 2). The cost of this inspection and report was to be borne by the seller.
On the same date that the purchase and sale agreement was executed the pest inspection was completed by the defendant Willington. (Plaintiff's Exhibit 5). The report consisted of a completed Veteran's Administration, U.S. Department of Housing and Urban Development form. This form is the standard form used in residential closings and is required by the Veteran's Administration before they will finance or guarantee a loan to a qualified buyer. The form itself indicates, inter alia, the name of the inspection company, the name of the property seller, the address of the inspection company, and the address of the property. The inspection company is required to indicate on this form which areas were inaccessible and what obstructions were encountered. The instructions on the form are clear that areas that are inaccessible or obstructed may include, but are not limited to, wall covering, fixed ceilings, floor coverings, furniture or stored articles. The only indication on the form completed by the defendant and submitted at the closing on December 18, 1992, of any obstruction or inaccessible area was the statement that certain areas behind walls, beneath floors, above ceilings and installation were obstructed. No mention was made of the lack of access to the crawl space or what the obstruction was that the inspector encountered. Additionally, paragraph 11 of the report is entitled "Statement of Pest Control Operator." Subparagraph A of paragraph 11 contains the following preprinted statement of the defendant: "The inspection covered the readily accessible areas of the property, including atticsand crawl spaces which permit entry. Special attention was given to those areas which experience has shown to be particularlysusceptible to attack by wood destroying insects. Probing and/or sounding of those areas and other visible accessible wood members showing evidence of infestation was performed." (Plaintiff's Exhibit 5) (emphasis added). On October 17th the plaintiff met with the home inspector to tour the premises. This meeting took place after the execution of the purchase and sale agreement and after the completion of the pest inspection. At that time the CT Page 7185 windows to the crawl space under the house were open and accessible to the home inspector. The windows were not lockable and were held shut by fasteners accessible from the exterior of the home. The home inspector viewed the crawl space by crawling approximately one-half way through the window opening. The home inspector never entirely entered into the crawl space and from the evidence it is apparent that its inspection was severely deficient. The plaintiff never entered the crawl space prior to taking title to the home. The defendant has posited a theory that the seller of this home had deceit in his heart and mislead the defendant into believing that there was no access to the crawl space. In fact the defendant had suggested that the crawl space windows may have been boarded up to prevent access. The court dismisses this testimony as mere speculation and lacking in credibility.[2]
Willington's numerous years in inspecting homes in the process of being sold and the fact that Willington received this referral from a real estate agent, should have made it obvious that a buyer would be relying on his expertise in inspecting the premises for pest damage. This is reinforced by the fact that the report was done on a Veteran's Administration form that contains a space for the "purchaser's signature."
In January of 1993 the plaintiff moved into the home with her four-year-old son and shortly thereafter began to experience difficulty in breathing. She surmised that something was wrong with the house and called the home inspector who once again viewed the premises. On January 10, 1993 the home inspector arrived at the premises and after removal of some of the wallpaper found the bathroom wall was covered with mold spores. Other problems were also uncovered. The home inspector volunteered to the plaintiff that he would testify on the plaintiff's behalf in any small claims action she elected to bring against the owner.
The plaintiff next contacted Mr. James Mangen, an acquaintance whom she had formerly worked with at the Town of Manchester, who had recently started a home improvement business. On January 23, 1993, Mr. Mangen visited the residence and after viewing the premises entered the crawl space and spent approximately one hour inspecting the crawl space. He then proceeded to the attic and did a full inspection of the attic and the entire home. After two and a half hours Mr. Mangen completed his inspection and gave the plaintiff a report indicating that CT Page 7186 the structural integrity of the home had been compromised by pest infestation and dry rot and that numerous other items needed attention. Based on this report the plaintiff left the house feeling it was unsafe. On February 3, 1993 the plaintiff entered the crawl space with Mr. Mangen and took photographs and a video of the damage done to the premises.
In May of 1993, the plaintiff contacted the defendant about its pest inspection report. This was occasioned by swarming insects inside the house and mud tunnels beginning to appear in living areas of the house. In June of 1993, Ned Beebe, owner of the defendant Willington, entered the crawl space under the house and recognized the problem with infestation. Beebe admitted to the plaintiff after the inspection that he had made a mistake with respect to performing the original inspection.
In September of 1993 the plaintiff entered into a contract with Terminex International to exterminate the pests at a cost of $830.00. While the plaintiff had initially contacted Terminex in March of 1993, when she first became aware of the problem, she lacked the funds necessary to eradicate the pests at that time.
After Mr. Mangen had inspected the home in January of 1993 he rendered an estimate of the cost of repairs to the premises occasioned by dry rot, powder post beetle infestation, termite damage, and other repairs. The estimate was in the amount of $12,757 (Defendant's Exhibit E). Mangen testified that the estimate should be adjusted to add 5% per year to adjust it to present day costs. On December 15, 1995, after the suit was brought and prior to trial, Mr. Mangen rendered a new estimate to the plaintiff that indicated that the same work would cost $27,618. (Plaintiff's Exhibit 19). When questioned by defense counsel with respect to the significant discrepancy between these two numbers, Mangen indicated that he felt sympathy for the plaintiff when he first did the estimate in 1993 and that his revised estimate done in 1995 was a more accurate assessment of the cost of repair. When examined on direct by plaintiff's counsel Mangen had indicated that the discrepancy between the 1993 and 1995 estimates was due to the need to bring the home into compliance with the building code. However, he appeared to be unfamiliar with the code requirements when questioned. Mangen further added that he had subsequently been convinced by his spouse that he would have to start charging fair value for his services if he wished to be successful in his business and that the 1993 estimate was not fair value. The court finds this CT Page 7187 portion of Mangen's testimony lacks credibility and that the 1993 estimate of damages is more indicative of the true damage suffered by the plaintiff. It is an estimate done at a time more proximate to the actual purchase and at a time prior to the contemplation of a lawsuit.
Mr. Mangen further testified that with regard to the 1995 estimate of damages he could associate $15,243 of the $27,618 to termite damage and the balance of the estimate related to other damages not associated with termite or pest damages. The balance of the $27,618 or $12,375 was associated with the structural repairs or other improvements unrelated to wood boring pest damage. This calculation was based upon his measurement of linear sill plate in the main house and the amount of wood that would need replacing. Additionally Mangen testified that the same proportions could be applied to the 1993 estimate in order to determine the amount of damages associated with pest damage.
The court finds that the defendant Willington was negligent in its inspection and reporting of the condition of the premises on the date of inspection. Willington knew or should have known that this home was the subject of a purchase and sale agreement and that the buyer would rely on its report on the condition of the premises in deciding whether to purchase the property or to seek the cost of repairs from the owner. The fact that the defendant Willington was required to render its report on a Veteran's Administration form with a signature area for the purchaser's signature should have put the defendant on notice that the plaintiff was in that group of persons that would reasonably rely on the report. Under the standards previously set forth, the court finds that the defendant had a duty to the plaintiff under these circumstances to inspect and report on the condition of the premises with due care and that the damages suffered by the plaintiff were a reasonably foreseeable result of the defendant's failure to meet that standard of care.[3]
The damage to the property was occasioned by both dry rot and insect infestation. Robert Wagner testified that he viewed the crawl space in March of 1993 as an employee of Terminex, Inc. and prepared a plan to exterminate the pests. He testified that the damage was obvious and extensive and that based upon the damage that he witnessed the activity had been going on for a number of years. He also indicated that he would have noted on his report that the crawl space was in fact inaccessible if that were the case. CT Page 7188
 III
The plaintiff presented evidence of damages in this case from two different perspectives. The first method was based on the cost of the repairs to restore the property to the condition that the plaintiff could have reasonably expected it to be in on the date of purchase assuming both the home and pest inspection reports were correct. Towards this end the plaintiff, Mangen, Prince and Wagner testified.[4]
The alternative method of calculating damages presented by the plaintiff was to present evidence of what the value of the real estate was in 1992, in the deteriorated condition, and compare it to the price paid by the plaintiff. In furtherance of this method the plaintiff elicited testimony from Laura Callahan, a certified real estate appraiser who testified that she appraised the real estate in December of 1995 and then adjusted its market value to reflect what she believed the market value was in 1992. In order to accomplish this it required her to take into consideration the condition of the premises in 1995, the condition of the premises in 1992, the effect of the general market conditions over the intervening three years, as well as the specific market conditions in this general area. In addition to this Callahan also testified that, in her opinion, the plaintiff overpaid for the house in 1992 by approximately $15,000. The court finds that this method of calculating damages is far more speculative and uncertain and thus less reliable than the estimate of the cost of repairs method. The determination of value was based upon the comparable approach and the comparables did not appear to be similar enough to ensure reliability in the value estimate. Additionally Callahan testified that the value of the home in 1992 was difficult to ascertain in the condition it was actually in because people in the market for that type of home had a large number to choose from at that time and in that neighborhood which did not have the problems that beset this home. Finally the cost of putting the house into the condition that the plaintiff reasonably expected that she was purchasing is in most instances a better gauge of damages.
Therefore the court finds that the plaintiff has been damaged in the amount of $10,615 consisting of $8365 in damages for restoration of the house for damage done by the pest infestation. $850 for the cost of eradicating the pests, $1250 representing the reasonable cost of alternative housing for the plaintiff and her son, $150 for the Mangen inspection fee.[5] The final issue CT Page 7189 with respect to damages involves the applicability of §52-572h(c) and the need for the court to allocate damages between multiple parties or tortfeasors. The court, sua sponte, raised this issue at the commencement of the trial when there were three defendants and nine counts in the complaint alleging various theories of recovery against them. The court finds the evidence with respect to liability and damages sufficient to allow it to separate and allocate the damages attributable solely to the negligent acts of the defendant Willington from the other damages suffered by the plaintiff that were not attributable to Willington. Thus the award of $10,615 represents the damages due the plaintiff caused solely by the negligent inspection and reporting of the defendant Willington.
Judgment may enter in accordance with this opinion.
ZARELLA, J.