Joseph D. CAREY III, plaintiff

v.

Richard MALONEY; Brian Fox; William Whitehead; John Doe # 1; John Doe # 2, badge # 188; Anthony Lupacchino; Mark J. Sirois; and the City of East Hartford, defendants.

Civil No. 3:04–CV–606(CFD).

United States District Court, D. Connecticut.

March 30, 2007.

A. Paul Spinella, Law Offices of A. Paul Spinella & Associates, Hartford, CT, for Plaintiff.

Daniel C. Demerchant, Howd & Ludorf, Hartford, CT, for Defendants.

*RULING ON MOTIONS FOR SUMMARY JUDGMENT*

DRONEY, District Judge.

## I. Introduction

The plaintiff, Joseph D. Carey III, brought this action under 42 U.S.C. § 1983 and Connecticut law against defendants, the City of East Hartford, six East Hartford police officers, and the Chief of Police for the East Hartford Police Department, Mark Sirois.[1] The allegations in Carey's eighteen-count amended complaint arise out of a May 2001 incident during which Carey was arrested and sprayed with aleoresin capsicum aerosol ("pepper spray").

In Count One, Carey alleges that Officers Richard Maloney, Brian Fox, William Whitehead, and Anthony Lupacchino (collectively the "Arresting Officers"), and John Does # 1 and # 2 (two unidentified East Hartford police officers), deprived him of rights secured by the United States Constitution, namely his right to be free from excessive force; his right to due process of law; and his right to be free from unreasonable arrest. In Counts Two through Seven, Carey alleges Connecticut state law violations against the Arresting Officers and the John Does. Those claims are that the Arresting Officers and John Does violated his rights secured by article first of the Connecticut Constitution, and assault and battery, "recklessness and maliciousness," negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. In Counts Eight and Nine, Carey alleges that Chief Sirois deprived him of rights secured by the United States and Connecticut constitutions by failing to promulgate and enforce appropriate policies for the East Hartford Police Department, and by failing to adequately screen, hire, train, supervise, and discipline the police officers under his command. In Counts Ten through Thirteen, Carey alleges that Sirois is liable for the torts allegedly committed by the Arresting Officers and John Does.

---

1. In April 2004, this action was removed from state court by the defendants after Carey amended his complaint to add causes of action based on federal law.

In Counts Fourteen through Seventeen,[2] Carey alleges municipal liability under the Connecticut Constitution, Conn. Gen.Stat. § 52–557n, respondeat superior, and indemnity. Each of the officers is sued in both his individual and official capacities. The defendants have filed three motions for summary judgment on the counts in Carey's amended complaint.

## II. Background[3]

On May 20, 2001, a group of Carey's family and friends were gathered at the East Hartford home of Carey's parents. Early in the afternoon, Lisa Grady, then Carey's girlfriend, arrived. Shortly after Grady's arrival, Grady and Carey had an altercation in which Grady screamed at, punched and scratched Carey. Carey's father, Joseph Carey, Jr. a former Hartford police officer, called the police to report the incident[4] and then attempted to separate Grady and Carey.

Officers Maloney and Fox responded to the call. After arriving at the Carey home, Officer Maloney spoke with Carey's father, Carey, and Grady. During her interview, Grady admitted that she had struck Carey. According to the defendants, Carey told Maloney that he pushed Grady to the ground during the altercation. Also, according to the defendants, Grady told Maloney that Carey threw her to the ground and kicked her.[5] Carey's complaint states that he "finally pushed Linda [sic] Grady to the ground in an attempt to get away from her."

After the interviews, Maloney and Fox decided to arrest both Carey and Grady. The subsequent events are described very differently by these two officers and Carey. For the purposes of resolving these motions, Carey's version must be credited. According to Carey's deposition testimony, the officers told him that it was mandatory for them to arrest him if they were arresting Grady. According to Carey, he responded by saying "I don't understand mandatory" and took a couple of steps toward his father with his back to the officers. Maloney and Fox then pushed Carey against the side of a nearby pick-up truck. Carey is six-foot, three-inch tall young man who weighed 265 pounds in 2001. Maloney was fifty-five at the time of the arrest. Fox is five-feet, seven-inches tall and weighed 170 pounds.

A few seconds later, Maloney and Fox decided to use pepper spray on Carey. According to Maloney's deposition testimony, he sprayed Carey four times in the face. According to Carey's deposition testimony, each officer simultaneously sprayed him twice. Fox removed Carey's sunglasses before the second burst of pepper spray. After the second burst, Maloney and Fox threw Carey to the ground and handcuffed him. Maloney called for back-up and Carey was taken to Fox's patrol car and locked in the back seat. Fox and Maloney returned to the Carey house where a group of people were gathered.

**2.** There are two counts identified as "Count Sixteen" the Court will refer to the first of these as "Count Sixteen" and the second as "Count Sixteen A."

**3.** The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

**4.** The Court notes that according to Joseph Carey, Jr.'s deposition testimony, his daughter placed the call at his direction.

**5.** At her deposition, Grady testified that Carey "restrained [her] and he sat [her] down on the ground."

Sergeant Lupacchino and Officer Whitehead then arrived at the Carey house in response to the call for back-up. Shortly after he arrived, Whitehead saw Carey smash the window out of Fox's patrol car and stick his head out the window. According to Carey, he was having difficulty catching his breath and had been shouting that he could not breathe. Whitehead had not seen the arrest of Carey and did not know he had been sprayed previously with the pepper spray. He also did not know of Carey's physical condition at the time. Whitehead believed that Carey was agitated and attempting to escape from the patrol car. Whitehead responded by spraying Carey with pepper spray one time.

Maloney transferred Carey to his car and transported him to the East Hartford police station. He was charged with disorderly conduct, interfering with a police officer, and assault on a police officer. At the police station, Carey was taken to a special washroom to wash off the pepper spray.[6] Carey never requested medical attention from the police. At 6:00 p.m., he posted bond and was released. Carey did not seek medical attention immediately following his release, but the following afternoon he sought treatment for headaches and numbness in his left arm.

On September 11, 2001, Carey pled guilty in the Connecticut Superior Court to breach of peace in the second degree in violation of Conn. Genn. Stat. § 53a–181 based on his conduct on May 20, 2001. The original charges were then apparently nolled.

## III. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 5(c)); *accord Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. *Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548; *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir.1998). Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993). Similarly, a plain-

---

**6.** According to the defendants, this decontamination took place ten to fifteen minutes after Carey was first sprayed. Carey contests this and points to a dispatch log which suggests that Maloney and Fox called for back-up at 2:00 pm and that Carey arrived at the police station at 2:18. This suggests that about twenty minutes elapsed before Carey was decontaminated.

tiff, as the nonmovant, may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact. Fed. R.Civ.P. 56(e). Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Maffucci*, 923 F.2d at 982.

## IV. The Defendants' Motions

### A. The Arresting Officers' Motion

#### 1. Federal Claims

The Arresting Officers, Maloney, Fox, Whitehead and Lupacchino, argue that they are entitled to summary judgment on Carey's § 1983 claim because (1) Carey has failed to establish that his rights under the United States Constitution were violated and (2) even if Carey's rights were violated the officers are entitled to qualified immunity.

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). The policy underpinnings of this doctrine involve "strik[ing] a balance 'between the

need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.'" *Locurto v. Safir*, 264 F.3d 154, 162–63 (2d Cir.2001) (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 924–25 (2d Cir.1991)). Simply stated, qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■ As the Second Circuit has summarized:

A threshold question for triggering the qualified immunity doctrine is whether an official's conduct violated a constitutional right.... If so, we then must decide whether qualified immunity attaches. Qualified immunity is warranted if either (1) the official's actions did not violate clearly established law, or (2) even if the actions violated a clearly established law, the official was objectively reasonable in believing in the lawfulness of his actions.

*Connecticut v. Crotty*, 346 F.3d 84, 101–02 (2d Cir.2003) (citations and quotations omitted). *See also Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995); *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir.1999).

#### (i) Excessive Force

■ Carey's excessive force claims are governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Application of this standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake." *Id.* at 396, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443. This evaluation must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and with an awareness that "police officers are often forced to make split—second judgments-in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443. Further, this evaluation must consider all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether he actively resisted the arrest. *Id.* at 396, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443. Physical force that does not cause severe or lasting injuries can be sufficient to establish excessive force. *See, e.g., Robison v. Via,* 821 F.2d 913, 923–924 (2d Cir.1987) (finding that allegations that officer pushed plaintiff against the inside of the door of her car, yanked her out, threw her up against the fender, and twisted her arm behind her back were sufficient to support excessive force claim, but that allegations that other officer pried at her fingers were insufficient); *McLaurin v. Falcone,* —— Fed.Appx. —— n. 3, 2007 WL 247728, at *1 n. 3 (2d Cir.2007) (summary order) (noting spraying a full can of mace into a suspect's bleeding face might constitute excessive force).

■ The Court finds that there are genuine issues of material fact regarding the conduct of Officers Maloney and Fox and the amount of resistance Carey offered. A reasonable jury could find that Carey was subjected to more force than necessary to secure his arrest, particularly given Carey's deposition testimony that Fox and Maloney failed to warn Carey before pushing him against the pick-up truck, that he did not resist arrest, and that he had only taken a couple of steps toward his father, as well as the short period of time before the pepper spray was used, and the number of times he was sprayed.

■ However, the Court finds that there are no genuine material issues of fact regarding Whitehead's use of force. The unrebutted evidence is that when Whitehead used pepper spray against Carey, Whitehead had no reason to know that Carey had been sprayed with pepper spray previously or was having trouble breathing. Whitehead simply saw Carey smash the window of the cruiser and stick his head out. His response was to use pepper spray against an individual in police custody, who appeared to be attempting to escape. Further, Carey offers no evidence to suggest that Whitehead's belief that Carey was attempting to escape from the back of the police cruiser was objectively unreasonable. Accordingly, the Court finds that no reasonable jury could find that Whitehead used excessive force against Carey and that Whitehead is entitled to summary judgment on this claim. Furthermore, even if Whitehead's use of force was excessive, he would be entitled to qualified immunity because reasonable police officers could differ over whether it was permissible to use pepper spray against a suspect who appeared to be attempting a forceful escape from a police cruiser.

### Qualified Immunity as to Fox and Maloney

As described above, "[t]he right of an individual not to be subjected to excessive force has long been clearly established." *Calamia v. New York,* 879 F.2d 1025, 1036 (2d Cir.1989). Nonetheless, an officer who violates this right is entitled to qualified immunity "[i]f the officer's mistake as to

what the law requires is reasonable." *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001). However, the Court finds that the issues of fact identified above, in particular the amount and nature of Carey's resistance to the Arresting Officers, are critical to determining whether Fox and Maloney were operating under a reasonable belief as to what level of force they were permitted to employ. See *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999) ("[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.") Accordingly, the motion for summary judgment on Carey's § 1983 claim against Fox and Maloney for excessive force is denied.

### *Officer Lupacchino*

■ As to Carey's excessive force claim against Lupacchino, Carey has presented no evidence that Lupacchino was in any way responsible for excessive force being applied to Carey. He has not argued that Lupacchino acted against Carey, advised any of the other officers to act, or failed to stop the other officers from acting against Carey. However, "[p]ersonal involvement of the defendant in the alleged constitutional deprivations is prerequisite to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) (granting summary judgment in favor of guard who filed prisoner misbehavior report but did not participate in subsequent hearing at which prisoner alleged rights were violated). *See also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). Lupacchino's mere presence at the scene where Carey's rights were allegedly violated is not sufficient to find that Lupacchino was personally involved in the violation of those rights. *Cf. Robison v. Via*, 821 F.2d 913, 923—924 (2d Cir.1987) (granting summary judgment in favor of

officer who assisted in arrest of plaintiff, but was not accused of personally applying excessive force). Accordingly, Lupacchino is entitled to summary judgment on this claim.

### (ii) **Deliberate Indifference to Medical Needs**

■ Carey claims that his due process rights were violated when he was placed in the back of an unventilated police car, and not provided immediate medical care after having been sprayed with pepper spray. "[T]he official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) (citation omitted). Factors to consider in determining whether a condition is serious enough, include: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted). Deliberate indifference requires "something more than mere negligence; but proof of intent is not required." *Weyant*, 101 F.3d at 856 (internal quotation marks omitted)

Carey admits that he was able to breathe well enough to shout and kick out the window on a police car, that the pepper spray was washed off of him shortly after his arrival at the East Hartford Police station, that he never requested medical attention from the police, and that he did not seek medical attention until nearly twenty-four hours after his release from

custody. While Carey has presented evidence that he was asthmatic and that it was uncomfortably warm in the back of the police car, he does not claim that the pepper spray actually provoked an asthma attack, that he suffered adverse consequences from the heat, nor did he describe any consequences from the pepper spray beyond the period immediately following its application.[7]

■ Thus, Carey has failed to present evidence from which a reasonable factfinder could conclude that his difficulty breathing amounted to a serious medical condition, or that leaving him in the back of the police cruiser for a few minutes amounted to deliberate indifference. Thus, each of the arresting officers is entitled to summary judgment on this claim.

### (iii) False Arrest

■ To establish a claim for false arrest, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d at 852 (false arrest claim brought pursuant to § 1983); *accord Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973 (1982) (false arrest claim brought pursuant to Connecticut law); *Outlaw v. City of Meriden*, 43 Conn.App. 387, 392, 682 A.2d 1112, *cert. denied*, 239 Conn. 946, 686 A.2d 122 (1996); *Hunter v. City of Bridgeport*, 2004 WL 1462459 (Conn.Super.Ct., June 4, 2004).[8] The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). *See also, Kent v. Katz*, 312 F.3d 568, 573 (2d Cir.2002) ("[a] § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.")

■ In determining whether police officers had probable cause to make an arrest, courts examine the "totality of the circumstances." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 119 (internal quotation marks omitted). However, an arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153–55, 125 S.Ct. 588, 594, 160 L.Ed.2d 537 (2004) (rejecting "rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest"). In other words, the constitutionality of an arrest does not turn on an arresting officer's ability to identify correctly the class of offense for which probable cause exists.

---

7. Carey's only other evidence that he suffered a serious injury during his arrest is a statement in an expert report submitted by a psychiatrist who examined him over two years following the incident. That report only indicates that "the ensuing respiratory trouble was much more severe than usual."

8. False arrest under both § 1983 and state law contain substantially the same elements. *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991) (discussing New York law); *Colon v. Ludemann*, 283 F.Supp.2d 747, 754 (D.Conn.2003) (discussing Connecticut law).

*Id.* at 154, 125 S.Ct. 588. If there are no material facts in dispute "as to the pertinent events and the knowledge of the officers," the question of probable cause may be determined as a matter of law. *Weyant,* 101 F.3d at 852; *Singer,* 63 F.3d at 118–19.

■ It is undisputed that Carey pushed Grady to the ground and that Maloney and Fox knew this when they decided to arrest him. Under Connecticut law "[a] person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another ..." Conn. Gen.Stat. § 53a–181(a). Furthermore, Carey's guilty plea and subsequent conviction for breach of peace, a lesser offense based on the conduct for which he was arrested, "is justly considered as conclusive evidence of probable cause." *Marczeski v. Kamba,* No. 3:99CV02479, 2001 WL 237199, at *2 (D.Conn.2001) (quoting *Clewley v. Brown, Thomson, Inc.,* 120 Conn. 440, 442, 181 A. 531, 533 (Conn.1935)). *See also Russo v. City of Bridgeport,* 479 F.3d 196, 204 n. 9 (2d Cir.2007) (noting that a judgment of conviction was a defense to a claim of false arrest); *Konon v. Fornal,* 612 F.Supp. 68, 71 (D.Conn.1985) ("if the plaintiff had been convicted of either of the crimes with which he was charged, or of any lesser included offenses, this would be conclusive proof of probable cause which would defeat his claim of false imprisonment.") No reasonable juror could find that Maloney and Fox were unreasonable in believing that Carey had engaged in tumultuous behavior and that he had assaulted or struck Grady.[9] Thus, each of the arresting officers is entitled to summary judgment on this claim.

## 2. State Claims

### (i) Common Law Claims

Carey brings claims against the Arresting Officers based on assault and battery, "recklessness and maliciousness," negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. The Arresting Officers argue (1) that they are entitled to governmental immunity; (2) that they are immune from liability under Conn. Gen.Stat. § 46b–38b(c); (3) that they were justified in using pepper spray; and (4) that Carey has not presented evidence to support his allegation of intentional infliction of emotional distress.

### *Counts Based in Negligence*

■ Under Connecticut state law, "a municipal employee ... has a qualified

---

9. The Arresting Officers argue that arresting Carey was not only lawful, it was mandatory under Conn. Gen.Stat. § 46b–38b. This section provides that

> Whenever a peace officer determines upon speedy information that a family violence crime, except a family violence crime involving a dating relationship, has been committed within such officer's jurisdiction, such officer shall arrest the person or persons suspected of its commission and charge such person or persons with the appropriate crime.

Conn. Gen.Stat. § 46b–38b(a). However, Conn. Gen.Stat. § 46b–38b continues:

> [n]otwithstanding the provisions of subsection (a) of this section, when a peace officer reasonably believes that a party in an incident of family violence has used force as a means of self defense, such officer is not required to arrest such party under this section.

Conn. Gen.Stat. § 46b–38b(b). Carey maintains that he only acted in self-defense. Thus, while Fox and Maloney had probable cause to arrest Carey, there is at least a genuine issue of fact about whether the arrest was mandatory.

immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." *Gordon v. Bridgeport Housing Auth.*, 208 Conn. 161, 166, 544 A.2d 1185 (1988) (Internal quotation marks omitted). However,

[t]he immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.

*Evon v. Andrews*, 211 Conn. 501, 505, 559 A.2d 1131, 1134 (1989).

The third exception for malicious, wanton or intentional acts clearly applies to each of Carey's common law claims except negligence and negligent infliction of emotional distress. Carey argues that the "imminent harm" exception applies to these two counts.

In Carey's negligence count he alleges that each of the Arresting Officers negligently (1) arrested him; (2) restrained and assaulted him; (3) failed to protect Carey from unreasonable use of force; (4) ignored warnings that Carey was having breathing problems; and (5) failed to obtain timely medical care. In his negligent infliction of emotional distress count, Carey alleges that each of the officers should have known that their actions or omissions involved an unreasonable risk of causing Carey emotional distress.

Fox and Maloney are not entitled to governmental immunity because, as to them, Carey was an identifiable individual and, assuming that Carey suffered an excessive use of force or the other harms he alleges, it should have been apparent to Fox and Maloney that Carey faced imminent harm if one of them did not act to prevent it. However, as set forth above, Carey has not presented a genuine issue of material fact suggesting it should have been apparent to Whitehead and Lupacchino that their failure to act would be likely to subject Carey to imminent harm. Whitehead and Lupacchino arrived at the scene after Carey was arrested and subjected to the first applications of pepper spray. Carey has not presented a genuine issue of material fact suggesting that Whitehead's use of pepper spray on Carey was unreasonable. Accordingly, Whitehead and Lupacchino are entitled to summary judgment on Carey's negligence and negligent infliction of emotion distress counts.

### Other Counts

Carey has not presented evidence that Lupacchino used any force against him or that Whitehead used unreasonable force. In Connecticut, a police officer may use such force as the officer reasonably believes necessary, under all the circumstances, to prevent an escape. *Martyn v. Donlin*, 151 Conn. 402, 411, 198 A.2d 700 (1964). Thus, summary judgment is granted as to Carey's assault and battery allegations against Whitehead and Lupacchino.

Similarly, as described above, Carey has not presented evidence suggesting that Whitehead and Lupacchino otherwise acted unreasonably towards him. Thus, Carey has failed to present a genuine of issue of material fact that Whitehead or Lupac-

chino behaved recklessly or maliciously, or that they intentionally inflicted emotional distress upon Carey and summary judgment is granted in favor of Whitehead and Lupacchino on these counts.

### (ii) State Constitutional Claims

Carey alleges that the Arresting Officers violated his rights secured by Article First, Sections One, Seven, Eight, Nine, Eleven, and Twenty of the Connecticut Constitution. The Arresting Officers argue that there is no private right of action for money damages for violation of Article First under the circumstances presented by this case.

The Connecticut Supreme Court has recognized a common law cause of action based on Article First, Sections Seven and Nine, for the reasons expressed in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Binette v. Sabo*, 244 Conn. 23, 28, 710 A.2d 688, 690 (1998). The *Binette* court created a state constitutional tort even though the plaintiff had common law and federal § 1983 causes of action available. According to the *Binette* court, a separate constitutional tort cause of action was necessary to acknowledge that, when a police officer violates a citizen's rights, "it is manifest that such an abuse of authority, with its

concomitant breach of trust, is likely to have a different, and even more harmful, emotional and psychological effect on the aggrieved citizen than that resulting from the tortious conduct of a private citizen" *Id.* at 698 (quoting *Bivens*, 403 U.S. at 392, 91 S.Ct. 1999).

Section Seven of the Connecticut Constitution protects against unreasonable searches and seizures. It appears that, like the Fourth Amendment of the United States Constitution, it protects against unreasonable use of force in effecting arrests. Thus, for the reasons expressed above in the discussion of Carey's § 1983 claim, summary judgment is granted as to Whitehead and Lupacchino [10] and denied as to Fox and Maloney.[11]

Article First, Section One provides that all men are "equal in rights." Carey has not presented evidence suggesting that the rights protected by Section One were implicated by the Arresting Officers' conduct.[12]

Section Eight provides in relevant part that "[n]o person shall ... be deprived of ... liberty ... without due process of law." While somewhat difficult to discern, it appears that Carey's due process claim is either (1) identical to his due process claim under the federal consti-

---

**10.** While Carey argues that in some circumstances the Connecticut Constitutional provides broader protection than the federal constitution, Carey has not identified any differences applicable here.

**11.** While it remains unclear whether qualified immunity applies in *Binette* cases, this issue need not be considered here because Fox and Maloney would not be entitled to summary judgment of qualified immunity for the reasons identified above. *See Yorzinski v. Alves*, 477 F.Supp.2d 461, 471 n. 5, 2007 WL 570322, at *8 n. 5 (D.Conn.2007) (noting ab-

sence of precedent establishing qualified immunity in *Binette* cases).

**12.** It appears that the plaintiff has confounded the concepts of "equality of rights" and "due process." "The equality of rights provision contained in article first, § 1, of the Connecticut constitution has a meaning equivalent to the equal protection clause contained in the fourteenth amendment to the United States constitution." *Zapata v. Burns*, 207 Conn. 496, 504, 542 A.2d 700, 705 (1988). However, the "due process" clause of the Fourteenth Amendment is distinct from the "equal protection" clause.

tution, or (2) based on the officers' alleged failure to adequately investigate before arresting him. Section Nine provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law." For the reasons expressed above in the discussion of Carey's § 1983 claim, the officers had probable cause to arrest Carey and did not deprive him of due process by failing to provide medical attention. Thus summary judgment is granted as to each of the defendants based on these claims.

Carey consents to the entry of summary judgment to the extent that his complaint alleges violations of Sections Eleven and Twenty, which do not apply to the facts of this case. Thus, summary judgment on Count Two is granted as to Whitehead and Lupacchino. Summary judgment is granted in part and denied in part as to Fox and Maloney.

### (iii) Statutory Immunity

The Arresting Officers argue that each of the state law counts against them is barred because Conn. Gen.Stat. § 46b–38b(c) protects police officers from liability "in any civil action regarding personal in-

jury or injury to property brought by any party to a family violence incident for an arrest based on probable cause." Conn. Gen.Stat. § 46b–38b(c). However, significant and largely unbriefed issues remain regarding the extent to which § 46b–38b(c) bars liability for state constitutional and common law torts.[13] In particular, the proper interpretation of "personal injury" and the compatibility of Conn. Gen.Stat. § 46b–38b(c) with Article First, Section Ten of the Connecticut Constitution remain uncertain. Because Fox and Maloney must proceed to trial on the federal excessive use of force count against then,[14] they will not be prejudiced by deferring determination of the scope, constitutionality and interpretation of Conn. Gen.Stat. § 46b–38b(c) until after trial.

### B. Sirois and East Hartford's Motion for Summary Judgment

#### 1. Federal Claims

Count Eight is a claim brought against Sirois under 42 U.S.C. § 1983 alleging that Sirois is liable in his individual capacity, as the Arresting Officers' supervisor,[15] and in

---

**13.** While a state legislature cannot generally override the state supreme court's interpretation of its constitution, *Binette's* holding was at least in part based on the fact that the state legislature has not barred the creation of a constitutional tort. *Binette v. Sabo,* 244 Conn. at 43, 710 A.2d 688 (reasoning that judicially created constitutional tort was appropriate where "the legislature has neither prohibited the creation of a constitutional tort action to remedy an unlawful search and seizure, nor has it crafted a meaningful alternative remedy for the constitutional violation.").

**14.** Conn. Gen.Stat. § 46b–38b(c) cannot bar federal claims against Fox and Maloney.

**15.** In his individual capacity, Sirois is protected by the doctrine of qualified immunity. In the context of supervisory liability the usual qualified immunity analysis contains an addi-

tional element: not only must the federal right the plaintiff alleges was violated have been clearly established, but the theory under which the supervisor may be held liable must also have been clearly established. *See Poe,* 282 F.3d at 140. In Poe the Second Circuit set forth the following test for overcoming this prong of a supervisor's qualified immunity:

> [the plaintiff] must allege sufficient facts to raise a triable issue of fact as to whether [the supervisor] knew or should have known that there was a high degree of risk that [his subordinate] would behave inappropriately with a woman during his assignment, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to [the plaintiff].

his official capacity, as a "policymaker" for East Hartford, for the constitutional violations committed by the Arresting Officers. Count Fourteen alleges that East Hartford is similarly liable for the constitutional violations committed by the Arresting Officers.

■ "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir.2002). *See also Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir.1999). However, a supervisor may be liable if the plaintiff can "affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." *Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir.2002) (quoting *Camilo–Robles v. Hoyos*, 151 F.3d at 7 (1st Cir.1998)).

■ "[W]hen the defendant sued for discrimination under ... § 1983 is a municipality—or an individual sued in his official capacity,—the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.... Liability of a municipal defendant or an individual sued in his official capacity under ... § 1983 cannot, however, be premised on a theory of respondeat superior." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225–226 (2d Cir.2004) (internal citations omitted). *See also Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In his amended complaint Carey alleged that Sirois and East Hartford are liable for the Arresting Officers' conduct because they failed to promulgate and enforce appropriate policies for the East Hartford Police Department, and failed to adequately screen, hire, train, supervise, and discipline East Hartford police officers. However, Carey has not presented evidence tending to suggest that the East Hartford Police Department was negligent in its staffing decisions and did not argue this issue in his Memorandum in Opposition to Sirois and East Hartford's Motion for Summary Judgment. In addition, while Carey alleges that Sirois and East Hartford have municipal or supervisory liability for constitutional violations related to detentions, searches, seizures, arrests, and the provision of medical attention to persons in official custody, he has only presented evidence and only makes arguments related to the Arresting Officers' use of pepper spray. Sirois and East Hartford's alleged failure to maintain adequate policies, failure to supervise and discipline, and failure to train regarding the use of pepper spray are addressed in turn below.

**(i) Failure to Maintain a Policy**

Both a supervisor and a municipality may be liable for an official policy under which constitutional violations occurred. *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035 ("Local governing bodies ... can be sued directly under § 1983 ... where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision"); *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir.1999) (a supervisor "may be liable because he created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." (internal alteration omitted)).

East Hartford's official policy regarding the use of pepper spray is set forth in its General Order 01.03.07 "Use of OC Aero-

*Id.* at 142. As set forth below in the text, this test has not been satisfied and Sirois is entitled to qualified immunity.

sol Agent" (the "pepper spray policy"). In relevant part the East Hartford pepper spray policy requires officers to be trained and certified in the use of pepper spray, and sets forth guidelines for when pepper spray may be used. The crux of Carey's argument that East Hartford's pepper spray policy is inadequate is that it is less detailed than the guidelines suggested by the National Institute of Justice, Technology Assessment Program in "Oleoresin Capsicum: Pepper Spray as Force Alternative" (the "TAPIC" guidelines). In particular, while the TAPIC guidelines suggest that policies discuss the necessity of issuing a warning prior to using pepper spray, and possible sanctions for indiscriminate use, the East Hartford pepper spray policy does not address these issues.

 The East Hartford pepper spray policy is not facially unconstitutional and Carey has not presented evidence suggesting that its lack of detail caused the conduct of which he complains. Indeed, if the Arresting Officers' use of pepper spray constituted constitutionally excessive force, it would also amount to a violation of the pepper spray policy's requirement that "police officers shall use only force that is reasonably necessary to effectively bring a person resisting arrest and/or presenting a threat of physical harm to officers or others under control." Carey does not allege an informal municipal custom inconsistent with the pepper spray policy. Accordingly, Carey has not raised a genuine issue of material fact that Sirois or East Hartford are liable for the Arresting Officers' conduct because of any failure to maintain an adequate policy regarding the use of pepper spray.

### (ii) —Failure to Supervise and Discipline

According to the United States Court of Appeals for the Second Circuit:

a supervisor may be found liable for his deliberate indifference to the rights of others ... for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury.

*Poe,* 282 F.3d at 140. "Plaintiff[ ] must establish [defendant's] deliberate indifference by showing that 'the need for more or better supervision to protect against constitutional violations was obvious,' but that [defendant] made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." *Amnesty Amer. v. Town of West Hartford,* 361 F.3d 113, 127 (2d Cir. 2004) (citing *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995)). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York,* 72 F.3d at 1049.

 Where a policy-making supervisor for a city is responsible for grossly negligent supervision, both the supervisor and the city may be liable. *Amnesty America,* 361 F.3d at 126 ("[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city "policy or custom" that is actionable under § 1983.' " (quoting *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989))). *See also Fiacco v. City of Rensselaer* 783 F.2d 319, 326–27 (2d Cir.1986) (plaintiff may establish municipal liability by showing that the city's policymakers were "knowingly and deliberately indifferent to the possibility that its

police officers were wont to use excessive force and that this indifference was demonstrated by the failure of the City defendants to exercise reasonable care in investigating claims of police brutality in order to supervise the officers in the proper use of force.").

 While Carey alleges that Sirois "failed to institute provisions for supervising [his subordinates'] conduct," Carey has not presented any evidence tending to suggest that Sirois had notice that his subordinates were likely to use pepper spray inappropriately, or that the need for corrective action was obvious. Carey has not pointed to lapses in Sirois's supervision, or even suggested what "provisions for supervising conduct" might have been called for. Thus, Carey has not presented a genuine issue of material fact regarding his allegation that the Arresting Officers were not adequately supervised.

### (iii) Failure to train

 "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389, 109 S.Ct. 1197, 103 L.Ed.2d 412. A plaintiff must also show that there is "a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional violation." *Amnesty America*, 361 F.3d at 129 (quoting *City of Canton*, 489 U.S. at 379, 109 S.Ct. 1197). In order to establish that failure to train constitutes deliberate indifference to the constitutional rights of the public, a plaintiff must establish (1) that a policymaker knows "to a moral certainty" that her employees will confront a given situation; (2)

that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and finally (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.1992). However, a supervisor or municipality will not be liable where a "one-time negligent administration of the [training] program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 408, 117 S.Ct. 1382, 1390, 137 L.Ed.2d 626 (1997). Further, it is not sufficient to show that a particular officer is unsatisfactorily trained. *See City of Canton*, 489 U.S. at 390–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program").

 Carey has presented evidence suggesting that the Arresting Officers did not understand fully the proper use of pepper spray. However, on its own, this evidence is insufficient to establish supervisory or municipal liability. Carey has not presented any evidence that would permit an inference that the Arresting Officers' claimed shortcomings were the result of a faulty training program rather than the negligent administration of a sound program or other unrelated circumstances. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 129–130 (2d Cir.2004) (requiring plaintiffs to provide evidence regarding defendant municipality's training program as well as evidence tending to rule out the possibility

that a valid program was negligently administered, or that subordinate officers negligently or intentionally disregarded training). Accordingly, Carey has not established a genuine issue of material fact regarding his claim that Sirois and East Hartford failed to train the Arresting Officers.

Because there is no genuine issue of material fact regarding any of the bases for supervisory or municipal liability suggested by Carey, Sirois and East Hartford are entitled to summary judgment.

## 2. State Law Claims against Sirois

Carey alleges that Sirois is liable for the common law and state constitutional torts allegedly committed by the Arresting Officers. Carey asserts that the inadequacies identified in support of his § 1983 supervisory liability claim also make Sirois liable under state law.[16] However, for the reasons described in granting summary judgment as to Carey's § 1983 count against Sirois, summary judgment is also granted as to each of the state law claims against Sirois. Carey has not presented any evidence tending to suggest that Sirois was personally responsible for, negligently failed to prevent, or encouraged the state torts allegedly committed by the Arresting Officers.[17]

## 3. State Law Claims against East Hartford

### (i) Connecticut Constitution

Carey also alleges that East Hartford is liable for the state constitutional torts allegedly committed by the Arresting Officers. Carey asserts that the inadequacies identified in support of his § 1983 municipal liability claim also make East Hartford liable under the state constitution. However, for the reasons described in granting summary judgment as to Carey's § 1983 count against East Hartford, summary judgment is also granted as to the state constitutional claims against East Hartford. Carey has not presented any evidence tending to suggest that East Hartford, as a city, caused, negligently failed to prevent, or encouraged the state constitutional torts allegedly committed by the Arresting Officers.[18] However, as discussed below, East Hartford may still be responsible for state constitutional violations negligently committed by its employees.

### (ii) Conn. Gen.Stat. 52–557n liability

Under Conn. Gen.Stat. 52–557n,[19] East Hartford is liable for negligent acts com-

---

16. Carey does not argue that state law governing supervisory liability for constitutional torts differs from that applied to determine supervisory liability for § 1983 violations.

17. Sirois is also protected by governmental immunity because supervising police officers is a discretionary act and Carey has not presented evidence suggesting that one of the exceptions applies. *See Gordon v. Bridgeport Housing Auth.*, 208 Conn. 161, 180, 544 A.2d 1185 (1988) ("the general deployment of police officers is a discretionary governmental action as a matter of law.")

18. In addition, absent statutory abrogation, East Hartford is protected from tort liability by governmental immunity. *See, e.g., Tryon v.*

*Town of North Branford*, 58 Conn.App. 702, 719, 755 A.2d 317, 327 (Conn.App.2000) (finding that governmental immunity protected town from claim that it failed to adequately supervise and train town employee).

19. Conn. Gen.Stat. 52–557n(a)(1) provides that:

Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties.... Except as otherwise provided by law, a political subdivision of the

mitted by its agents while acting within the scope of their employment. While a municipality is exempt from liability for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law," the Connecticut Supreme Court continues to apply the common law exemptions to governmental immunity set forth above. *See Doe v. Petersen,* 279 Conn. 607, 614, 903 A.2d 191, 197 (2006). As described above, Carey's claims include allegations of negligence as to which governmental immunity does not apply. Thus, summary judgment is denied as to this count.

### (iii) Respondeat Superior

"At common law, municipal officers were liable for their own torts, but the municipality, their municipal master, was not vicariously liable for those torts." *Sanzone v. Bd. of Police Comm'rs,* 219 Conn. 179, 193, 592 A.2d 912 (1991) (internal quotation marks omitted) *abrogated on other grounds by State v. Courchesne,* 262 Conn. 537, 816 A.2d 562 (2003). Statutory abrogation is required to overcome this municipal sovereign immunity. *See Williams v. City of New Haven,* 243 Conn. 763, 766–767, 707 A.2d 1251,1253 (1998) ("[A] munic-

ipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity.") Because Carey's common law respondeat superior count does not rely on statutory abrogation, summary judgment is granted as to this count.

### (iv) Indemnification

Conn. Gen. Stats. § 7–465 [20] requires municipalities to indemnify employees for liability imposed for violations of any person's civil rights as long as the employee "was acting in the performance of his duties and within the scope of his employment" and the injury "was not the result of any wilful or wanton act." Because summary judgment has been denied as to allegations for which East Hartford would be required to indemnify its employees, including Carey's § 1983 claim against Fox and Maloney, summary judgment is denied as to this count.

### C. John Does' Motion

John Doe # 1, John Doe # 2 and "John Doe Whitehead" move for summary judgment for the reason that the claims against them are barred by the statute of limitations. Summary judgment is granted absent objection [21] as to John Does # 1 and

---

state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

20. Conn. Gen. Stats. § 7–465 provides in part that:

Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality ... all sums which such employee becomes obligated to pay by reason of the liability imposed upon

such employee by law for damages awarded for infringement of any person's civil rights ... if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty.

21. Carey "has no objection to summary judgment entering on [his] claims against defendants 'John Doe # 4' and 'John Doe # 5.' " *Because there are no John Does # 4 and # 5,* and the plaintiff did not address John Does # 1 and # 2 in response to their motion, the

#2. Summary judgment is moot as to "John Doe Whitehead" because summary judgment has already been granted in his favor.

## V. Conclusion

The Arresting Officers' motion for summary judgment [Dkt. #10] is GRANTED as to Whitehead and Lupacchino. It is DENIED as to the claims against Fox and Maloney. Sirois and East Hartford's motion for summary judgment [Dkt. #9] is GRANTED as to Sirois. It is also GRANTED as to Fourteen (§ 1983), Fifteen (state constitutional torts), and Sixteen A (respondeat superior). However, it is DENIED as to Counts Sixteen (Conn. Gen.Stat.52–557n) and Seventeen (indemnification). The John Does' motion for summary judgment [Dkt. #11] is GRANTED.

Remaining are Carey's § 1983 excessive use of force claim against Fox and Maloney (contained in Count One); his tort claims under the common law and the Connecticut Constitution, Article First, Section 7 against Fox and Maloney (contained in Counts Two through Seven); and his Conn. Gen.Stat. §§ 52–557n and 7–465 claims (Counts Sixteen and Seventeen) against East Hartford.

Court will assume that plaintiff consents to the entry of summary judgment as to John